White, J.
This proceeding was instituted on the relation of the trustees of the Montgomery County Children’s Home against the defendants, the trustees of the Ohio Soldiers’ and Sailors’ Orphans’ Home, to compel them to contract with the relators under the act of May 13, 1880 (77 Ohio L. 187), for the support of certain orphans and destitute children of Ohio soldiers and sailors. The alternative writ was issued October 18,1881. The case was submitted on an agreed statement of facts, in writing. From this statement it appears that the relators presented forty-seven such children in their charge, to the defendants, for admission to the Ohio Soldiers’ and Sailors’ Orphans’ Home, in accordance with the rules and regulations established by the defendants for the admission of children to such home, *276 and asked the defendants to direct the superintendent of said home to contract, at a per capita, with the relators, for the support of said children, and to pay the relators therefor out of the $10,000 appropriated by the second section of said act. That the defendants admitted that said children thus presented were proper persons to be received into the home under their charge, if there was room therein. That the defendants would not contract for the support of said children, for the year ending February 15, 1881, for want of l’oom in the institution. The time of presenting these children for admission is said, in the agreed statement, to have been at a meeting of the defendants held “on the day of ,1881.” It appears that during the year 1880, and thus far in 1881, Montgomery county has had three mox’e orphan children in the last named Home than her quota, under section 677 of the Revised Statutes.
The eleventh annual report of the defendants, as trastees for the year 1880, was also given in evidence. The following extract shows their action under and construction of the act of April 13, 1880, above referred to:
“ support op orphans outside the home.”
“ Preliminary steps have been taken to carry into operation the provisions of the act of April 13, 1880 (Laws, p. 187), but no contracts have as yet been made in that behalf. The statute is obscure, and the board . have been in a state of uncertainty as to their powers and duties under it. It reads as follows: omitting formal parts and the second section, which appriates $10,000 for the purposes of the act:”
“ That the Trustees of the Soldiers’and Sailors’ Orphans’ Home, and under their direction the Superintendent, is hereby authorized and directed to contract at a per capita not to exceed the current expense cost of keeping the children at the Xenia Home, with the proper officers of the different children’s asylums or homes in the state, for the support of such children as have been or may hereafter be transferred to said homes, who are children of soldiers or sailors who served in the late war from the State of Ohio.”
‘ ‘A number of questions have arisen in our minds in considering the act, difficult of settlement. Who are to receive the benefit of its provisions? Are there other restrictions upon those who may, than that they are to be ‘ children of soldiers or sailors who served in the late war from Ohio?’ or must they fall within some of the classes who may be admitted to the Home? Who shall make the ‘transfers’ contemplated? Whence shall they be made and how? Are children first to be admitted to the Home, or *277 their applications for admission accepted before they can be ‘ transferred,’ or is it intended to ‘ transfer ’ those not inmates or applicants to become such? Are the board to have any supervision over them when ‘ transferred?’ What if those ‘ transferred ’ are not properly cared for? Are the benefits of the act to be apportioned among the counties of the State as contemplated by section 677 of the revised statutes? These are some of the questions that have arisen, the consideration of which has caused delay in taking action under the law.
“ On full reflection and consultation with the attorney-general (who is in accord with the view taken as to its construction), we have concluded to treat the act as in pari materia with the general law governing the Home, and as a provision for the support and care of such classes of children named in section 676, Revised Statutes, as it, for want of room, cannot accommodate. All the counties of the state, as far as possible, are to have their proportional benefits of the law. We suppose the trustees of the Home are to make the ‘ transfers.’ They cannot make transfers of children not under their authority. Such authority can be obtained only by acceptance into the Home, or, at least, by the acceptance and approval of applications for admission. But the board can only admit children agreeably to said section 677, which provides that ‘ every county shall be entitled to its proportion, according to population, of the whole number that the Home will accommodate.’ Any other construction in this particular would work unequally and unfairly. The counties wherein these homes or asylums are situated might be enabled to support their orphans from the state treasury, thus compelling other counties having no such homes to contribute to such support, and to maintain their own indigent orphans in addition. Such could not have been the intention of the legislature. To effect such a result the terms of the statute should be explicit and imperative.
“ While the act i emains as it is, then it will be our purpose so to admin- - ister it in connection with the general law referred to, as that no county shall have more then its due share of their benefits. And we think the board should so far retain supervision over the children ‘transferred’as to see that they arc properly cared for and supported. Provision for this should be made in the contracts for support.
“We have stated our views and purposes thus fully upon this very important, but obscure, statute, in order that legislative correction may be made, if wrong.”
Tbe appropriation act, which was passed and took effect April 19, 1881, contains the following clause:
“Eor the care and support of orphans outside the home, under the act of April 13, 1880 (77 O. L. 187), and in accordance with the interpretation thereof, as set forth in the recent report of the trustees of said home, the sum of ten thousand *278 dollars ($10,000); provided, the appropriation of ten thousand dollars ($10,000) made in said act, or so much thereof as remains unexpended, may be used likewise in substantial accordance! with the spirit of said act, as thus interpreted, in payment for the support of orphans thereunder in the year ending February 15, 1881.”
On April 20, 1881 (78 O. L. 201) another act was passed on the subject. The first section is as follows:
“ That the trustees of the soldiers’ and sailors’ orphans’ home are hereby authorized to contract, at a per capita not to exceed the current expense cost of supporting the children at the Xenia home, with the proper officers of any of the children’s homes authorized by the laws of Ohio in the state, for the support of such children as are by existing law entitled to admission to the Xenia home, provided, that the total expenditure under this statute shall not exceed the sum of ten thousand dollars for any one year, from February 15th to February 15th of the succeeding year.”
The following is the third section:
“ That the act entitled ‘ an act to provide for the support of the soldiers’ and sailors’ orphans outside of the soldiers’ and sailors’ orphans’ home in Xenia,’ passed April 13,1880 (77 O. L. 187), be and the same is hereby repealed; provided that nothing in this section shall operate to impair any rights to the appropriations made in said repealed act which have accrued heretofore; and this act shall take effect and be in force from and after its passage.”
The question for decision is, whether the relators are entitled to a peremptory, writ.
In the determination of this question the first inquiry is as to the effect of. the clause above quoted of the appropriation act, upon the act of April 13,1880.
*279 Whatever may have been the original meaning of the act, the effect of the adoption of this clause was to incorporate it into the original act; and, in the absence of any intervening rights, to give to the act the same meaning and effect as if the clause had been embodied in it at the time of its passage.
The $10,000 appropriated by the act of April 13, 1880, was a charitable provision made by the legislature for the objects named in the act. The provision was to be carried into effect by the defendants. The means prescribed for the distribution of the fund, were through contracts to be made by the defendants, or under their direction, “with the proper officers of the different children’s asylums or homes in the state.” No such contracts having been made, it was competent for the general assembly to repeal the provision, or to construe it according to its discretion; and, as already stated, such construction was given to the act by the clause in the appropriation act above quoted.
The proviso in section 3 of the act of April 20, 1881, does not affect the case. The saving in the proviso of rights which had accrued under the act of April 13, 1880, embraced the legislative construction of the act as declared in the clause approving the construction given to it by the defendants in their report, no contracts having been previously entered into by the defendants for a different distribution of the fund.

Peremptory writ refused.